UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 88-175 (CCC) |
| v. | **OPINION** |
| WAYNE PRAY, | |
| Defendant. | |

**CECCHI, District Judge.**

This matter comes before the Court upon defendant Wayne Pray's ("Defendant" or "Pray") Amended Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 21 ("Def. Br."). The United States of America (the "Government") opposes the motion in part. *See* ECF No. 26-2 ("Gov't Br."). Defendant filed a reply. ECF No. 27 ("Reply"). The Court has considered the submissions in support of and in opposition to Defendant's motion, and decides this matter without oral argument pursuant to Federal Rule of Criminal Procedure 43(b)(4). For the reasons stated below, Defendant's motion is **GRANTED**.

**I.  BACKGROUND**[1]

    **A.  Overview**

Mr. Pray, a 76-year-old male, has been incarcerated for over thirty-five years as he serves a life sentence following his conviction in October 1989 for several drug-related crimes. Mr. Pray's offenses stem from his time as leader of "The Family," a northern New Jersey criminal organization engaged in the importation, distribution, and sale of cocaine and marijuana in the

---

[1] The events outlined herein are described in more detail throughout the parties' submissions and the record more broadly. *See generally* Def. Br.; Gov't Br.

state and beyond during the 1970s and 1980s. Following a six-month trial in 1989, a Newark federal jury found Mr. Pray guilty on the following charges:

- Count 1: being a principal administrator of a continuing criminal enterprise ("CCE") involving more than 150 kilograms of cocaine, in violation of 21 U.S.C. § 848(b);
- Count 2: conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine and more than 100 kilograms of marijuana;
- Counts 4–6: possession with intent to distribute cocaine; and
- Count 7: conspiracy to import more than 98 kilograms of cocaine.[2]

ECF No. 6 at 1–2.

### B. Sentencing

Mr. Pray was sentenced by the trial judge, U.S. District Judge John W. Bissell (ret.), on January 12, 1990. ECF No. 24-1. The Government adeptly describes the complex nature of Judge Bissell's sentence as follows: "The net result was that Pray received a non-parolable life sentence on Counts 1, 2, and 7, an aggregate 50-year concurrent (and non-parolable) sentence on Counts 4, 5, and 6, and an aggregate six-year term of supervised release 'that would go into effect only if' Pray were, 'for some reason, released from imprisonment prior to the expiration of his natural life.'" Gov't Br. at 3 (quoting January 22, 1990 Judgment of Sentence).

### C. Procedural History

In the years following the imposition of his sentence, Mr. Pray challenged his conviction and incarceration through a series of direct and collateral attacks. *See id.* at 4–5 (detailing extensive history of appeals, requests for sentence reduction and correction, and habeas petitions). On August 22, 2018, this action was transferred to the Undersigned. ECF No. 7. On October 5, 2018, the Court denied Mr. Pray's motion to vacate his sentence pursuant to *United States v.*

---

[2] The jury acquitted Mr. Pray on several other counts. Gov't Br. at 2.

*Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014). ECF No. 9. Following that decision, Mr. Pray renewed his efforts for a reduction in sentence, most recently through an amended motion seeking a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons" including his age, duration of incarceration, deteriorating physical condition due to various medical issues, and demonstrated rehabilitation. *See generally* Def. Br. The United States filed a brief partially opposing Defendant's request (*see* Gov't Br.) and Mr. Pray filed a reply (*see* Reply).

## II.  Legal Standard

Following the passage of the First Step Act in 2018, incarcerated individuals may directly petition the sentencing court for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). As an initial step, prisoners must satisfy the administrative exhaustion requirements laid out in the statute. *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *1 n.2 (D.N.J. May 15, 2020). That is, the prisoner must present a request to the warden of his or her correctional institution. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). The inmate may then move for a reduction in sentence before the district court thirty days after submitting the request or after receiving a denial, whichever is earlier. *Id.*

Upon the defendant's motion, the district court may, but need not, "reduce a defendant's term of imprisonment 'after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]'" *United States v. Al Hunaity*, Crim. No. 18-723, 2024 WL 982044, at *4 (D.N.J. Mar. 7, 2024) (quoting 18 U.S.C. § 3582(c)(1)(A)). The defendant bears the burden

of demonstrating entitlement to a reduction in sentence. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) (internal citations omitted).

### III. Discussion

#### A. Eligibility For Sentence Reduction On Old Law Counts

As an initial matter, the parties disagree as to whether Mr. Pray is eligible for reduction in sentence under 18 U.S.C. § 3582(c) based on the structure of the sentence imposed by Judge Bissell. *Compare* Def. Br. at 3–4 *with* Gov't Br. at 6–8. To properly analyze the present motion, a more detailed review of the sentence structure is warranted. Critically, the underlying conduct on which Mr. Pray was convicted, and ultimately sentenced, began before and continued after November 1, 1987, the effective date of the Sentencing Reform Act of 1984. Pub. L. No. 89-670, § 235, 98 Stat. 1837, 2031 (1984). As a result, at the time of Mr. Pray's sentencing, the then-new U.S. Sentencing Guidelines ("U.S.S.G.") applied only to Counts 1 and 2 (the "New Law Counts"), because those counts involved conduct continuing beyond the effective date. Meanwhile, Counts 4 through 7 (the "Old Law Counts"), which involved conduct *prior to* the effective date, were not subject to the U.S.S.G. and were required to be imposed without parole eligibility. Moreover, Judge Bissell was constrained by then-binding Third Circuit precedent which called for a "single, general sentence" as to Counts 1, 2, and 7 "because the Count 1 CCE offense encompassed the Count 2 and 7 conspiracy offenses." Gov't Br. at 2 (citing *United States v. Aguilar*, 843 F.2d 735, 736–37 (3d Cir. 1988); *United States v. Grayson*, 795 F.2d 278 (3d Cir. 1986)).

With the above parameters cabining the sentence, Judge Bissell imposed the following structure:

- On New Law Counts 1–2 and Old Law Count 7, a general sentence of life imprisonment, which was mandatory for Count 1 only, with no term of supervised release; and

- On Old Law Counts 4–5, 25 years' imprisonment without parole, to run concurrently with each other and the life sentence on Counts 1–2 and 7, plus a three-year concurrent term of supervised release on each count; and

- On Old Law Count 6, 25 years' imprisonment without parole, to run concurrently with the life sentence on Counts 1–2 and 7 and consecutively to the 25-year terms of imprisonment on Counts 4–5, plus a three-year term of supervised release that would run consecutively to the other terms of supervised release.

*Id.* at 3. The New Law Counts versus Old Law Counts distinction is pertinent because the current iteration of 18 U.S.C. § 3582(c), the statute under which Mr. Pray seeks relief, does not allow for the reduction in sentence for sentences relating to conduct occurring prior to the effective date of the Sentencing Reform Act, such as Counts Four through Seven here.

In an effort to circumvent this prohibition, Mr. Pray contends that his "combined 50-year concurrent 'old law' sentences on Counts Four, Five and Six expired no later than April 2019, based on the applicable rate of 'good time' that he earned under former 18 U.S.C. § 4161 *et seq.*" Def. Br. at 3. Accordingly, "[l]egally speaking, Mr. Pray is therefore currently serving only the 'new law' life term on Count One," as there was no separate sentence imposed on Counts Two or Seven, thus rendering him eligible for a sentence reduction. *Id.* at 4. The Government disputes Mr. Pray's contentions about eligibility for reduction on this basis, but nevertheless presents an alternative route to sentence reduction for the Old Law Counts: "Old" Federal Rule of Criminal Procedure 35(b) ("Old Rule 35(b)"). *See* Gov't Br. at 6–8.

The version of Rule 35(b) governing Mr. Pray's conduct at the relevant time reads:

**Reduction of Sentence.** A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

5

Fed. R. Crim. P. 35(b) (1985). Although the rule on its face establishes a 120-day time limit, which has, of course, expired, that time limit may be waived, as the Government has done in response to Mr. Pray's current motion. Gov't Br. at 8; *see Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849–50 (2019) (explaining the concept of non-jurisdictional claim-processing rules, which may be waived). Because the Government has affirmatively waived this bar, and Defendant has consented to such waiver, the Court will not override that waiver. *See Wood v. Milyard*, 566 U.S. 463, 472–74 (2012).

Relief under Old Rule 35(b) is appropriate where the court "feels sufficiently motivated by the information contained in the moving papers" to "undertake reconsideration of the existing sentence and ultimately perhaps to alter it." *McGee v. United States*, 462 F.2d 243, 247 n.8 (2d Cir. 1972). Such a determination is within the "sound discretion of the district court." *United States v. Guglielmi*, 929 F.2d 1001, 1004–05 (4th Cir. 1991) (citation omitted). Ultimately, here, in light of the compelling circumstances presented by Mr. Pray (as further detailed below), and the Government's support of such relief and waiver of the time limit, the Court can and will reduce the Old Law Counts of Mr. Pray's sentence to time served.[3] Doing so accords with Old Rule 35(b)'s purpose of affording a court "an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented" in the period following the imposition of a sentence, as the parties have done here. *United States v. Johnson*, 634 F.2d 94, 96 (3d Cir. 1980) (citation omitted). Accordingly, the Court will proceed with considering Mr. Pray's § 3582(c)(1)(A) application for the New Law Counts.

---

[3] Accordingly, the Court need not address the merits of Mr. Pray's contention that he is serving only the life sentence on the New Law Counts at this juncture.

### B. 18 U.S.C. § 3582(c)(1)(A) Analysis For New Law Counts

1. Exhaustion

A defendant seeking reduction of a term of imprisonment must, at the outset, demonstrate that he has exhausted his claim with the Bureau of Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A); *see United States v. Raia*, 954 F.3d 594, 596–97 (3d Cir. 2020). Here, this element is not in dispute. Mr. Pray asserts that more than thirty days have elapsed since he requested that the warden recommend a sentence reduction. Def. Br. at 15. The Government also concedes that this element is satisfied. *See* Gov't Br. at 9 ("The exhaustion requirement isn't an issue here. Pray satisfied it while his 2020 motion was pending."). Therefore, the Court will proceed with the remainder of the § 3582(c)(1)(A) analysis.

2. Extraordinary & Compelling Reasons and Consistency With Sentencing Commission Policy

In support of his motion, Mr. Pray invokes a litany of bases to justify a reduction in sentence, including his age, the amount of time he has been incarcerated, his current health conditions, and his demonstrated rehabilitation. *See generally* Def. Br. In opposition, the Government acknowledges that Mr. Pray's motion presents a "close call," but ultimately contends that Mr. Pray fails to meet § 3582(c)(1)(A)'s statutory eligibility requirements. Gov't Br. at 9.[4]

---

[4] The Court finds that the Government is correct insofar as it contends Mr. Pray is ineligible for a reduction pursuant to § 1B1.13(a)(1)**(B)**. *See* Gov't Br. at 10. This subsection establishes that reduction is permissible whereby "the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned." U.S.S.G. § 1B1.13(a)(1)(B) (U.S. Sent'g Comm'n 2023). This subsection is plainly inapplicable to Mr. Pray as it pertains to individuals sentenced under the "three strikes" rule, which Mr. Pray was not, as he acknowledges in his reply brief. *See* Gov't Br. at 10; Reply at 27–29; *United States v. Jones*, 980 F.3d 1098, 1101 n.3 (6th Cir. 2020) ("This provision is not relevant in Jones's case and is generally not at issue in the usual compassionate release case involving 'extraordinary and compelling reasons.'") (quoting U.S.C. § 3572(c)(1)).

7

18 U.S.C. § 3582(c)(1)(A) provides:

**(c) Modification of an Imposed Term of Imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—

**(1)** in any case—

**(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

**(i)** extraordinary and compelling reasons warrant such a reduction;

or

**(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

The U.S. Sentencing Commission, tasked by Congress with promulgating policy governing the implementation of § 3582(c)(1)(A), establishes in the U.S.S.G.:

**(a) In General.**—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--

**(1)**   **(A)** extraordinary and compelling reasons warrant the reduction; or

**(B)** the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

>   **(2)** the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>   **(3)** the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a).

"Extraordinary and compelling reasons" is not defined in § 3582(c)(1)(A)'s statutory text. Instead, Congress deferred to the Sentencing Commission on this front, counseling only that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). In accordance with the Sentencing Commission's 2023 amendments to § 1B1.13, Amendment 814, district courts are bound by the list of "extraordinary and compelling reasons" identified in the U.S.S.G.[5] These include:

>   **(b)** <u>Extraordinary and Compelling Reasons</u>.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
>   **(1)** <u>Medical Circumstances of the Defendant</u>.—
>
>   . . .
>
>   **(B)** The defendant is—
>
>   **(i)** suffering from a serious physical or medical condition,
>
>   **(ii)** suffering from a serious functional or cognitive impairment, or

---

[5] In 2023, in accordance with the Supreme Court's decision in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), the U.S. Sentencing Commission amended the existing policy statement to the version herein to confirm its binding effect on prisoner-initiated motions and to expand the listing of "extraordinary and compelling" circumstances sufficient to show entitlement to reduction under § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13 (Amendment 814); *Concepcion*, 597 U.S. at 495 ("Congress expressly cabined district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements."); *see also United States v. Ellison*, No. 11-CR-00404, 2024 WL 1624710, at *2 (W.D.N.C. Apr. 15, 2024) (explaining the implementation and effects of the amended policy). Prior to 2018, only the Director of the BOP could file these types of motions. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 395 (E.D. Pa. 2020). In the period following that change in 2018 and before the Sentencing Commission clarified its policy in 2023, there was a lack of clarity as to whether Courts were bound by the Sentencing Commission policy with respect to prisoner-initiated motions for a reduction in sentence, as opposed to those filed by the BOP Director. *See id.* at 397–98. The amendments helped elucidate the binding effect on prisoner-initiated motions such as Mr. Pray's.

> > **(iii)** experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> . . .
>
> **(2)** <u>Age of the Defendant</u>.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> . . .
>
> **(5)** <u>Other Reasons</u>.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).
>
> **(6)** <u>Unusually Long Sentence</u>.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b).

The Court finds that Mr. Pray satisfies the Sentencing Commission's policy detailed in § 1B1.13(a)(1)(A), specifically through the "extraordinary and compelling reasons" identified in § 1B1.13(b)(2). There is no dispute that Mr. Pray satisfies the age (65 years old) and duration of incarceration (10 years or 75 percent of the term of imprisonment, whichever is less) requirements. U.S.S.G. § 1B1.13(b)(2). Indeed, Mr. Pray is in his mid-seventies and has been incarcerated for over thirty-five years. Def. Br. at 9; Gov't Br. at 11.

The Government, however, argues that Mr. Pray fails to meet the final requirement of this subsection: that he "is experiencing a serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(2)(B). In support of satisfaction of this requirement, Mr. Pray cites the following conditions: severe arthritis in the hips requiring a double hip replacement surgery, which has limited his mobility and presents risks of falls and inability to avoid danger within the prison facility; blindness in one eye stemming from glaucoma and cataracts, in addition to a detached retina; polycystic kidney disease (with progressive renal insufficiency); persistent elevated PSA and enlarged prostate; pre-diabetes; hypertension; history of syncope; and a past history of heart attack. Def. Br. at 10–11. Mr. Pray reports that, as a result of these conditions, he is unable to stand for long periods of time and cannot engage in any significant outdoor activity because of his need to always be close to a bathroom. *Id.* at 11. He further notes a persistent pain in the kidney region, which is exacerbated by difficulty to get pain medication in prison. *Id.* Mr. Pray's contentions are generally supported by medical evidence in the record. *See, e.g.*, ECF No. 24, Ex. E[6] at 419 (finding Mr. Pray had "[m]arkedly enlarged kidneys bilaterally with numerous cysts, compatible with adult polycystic kidney disease" and an enlarged prostate gland); Ex. F at 562 (noting "Inmate Pray has a history of detachment repair and open-angle glaucoma" and that "vision is 20/400 in the right eye," with "poor vision in the right eye due to optic nerve pallor"); Ex. G at 112 (noting "progression of renal insufficiency"); Ex. G at 188 (identifying lower urinary tract symptoms including urinary urgency and frequency). The Government's argument that such conditions do not constitute a "serious deterioration" are unavailing. Indeed, though Mr. Pray may not have *one* specific condition that constitutes "serious

---

[6] Paper copies of Mr. Pray's medical records are on file with the Court but were not filed electronically on the docket due to the sensitive nature of the documents.

11

deterioration," ultimately, the Court finds that the asserted conditions, when considered in combination, present a compelling case for finding that Mr. Pray satisfies the "extraordinary and compelling reasons" criteria such that a reduction in sentence is warranted.

The Court agrees with the Government that Mr. Pray's application presents a "close call." But the Court finds that the propriety of the relief sought is pushed over the top by Mr. Pray's exemplary demonstration of rehabilitation. As noted above, it is well established that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a reduction in sentence. 18 U.S.C. § 994(t); *see* U.S.S.G. § 1B1.13(d) ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."). Nevertheless, the Court is entitled to consider an inmate's rehabilitation in conjunction with other factors—such as age, duration of incarceration, and health—as it will do here. *See* U.S.S.G. § 1B1.13(d) ("[R]ehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."); *see, e.g.*, *Rodriguez*, 451 F. Supp. 3d at 405 ("I consider rehabilitation in conjunction with the other reasons outlined here.").

During his term of incarceration, Mr. Pray has made extensive and commendable efforts to counsel others, both those who are incarcerated and those who are not, towards a better path. For example, Mr. Pray published two books intending "to attract the attention of young, underprivileged African-American readers who might be at risk of succumbing to the temptations of apparent adventure and profit from engaging in the drug trade" and "to warn those youth of what a fruitless, dead-end road Mr. Pray himself later realized he had taken." Def. Br. at 12. He has echoed the same message (and warning) in online blog posts and through other multimedia.

*Id.* at 12–13; *see also* ECF No. 21-2 (2019 USA Today article noting Mr. Pray "mentors kids who are on the cusp of making the same mistakes he did and created a CD with important life lessons called '*Akbar Pray Speaks to the Streets*'"); ECF No. 10-1 at 1 (letter from former Newark, New Jersey mayor stating that, through his publications, "Mr. Pray was able to show, as few others could, the sheer foolishness of pursuing a lifestyle that ultimately could only lead to two places: a jail cell or a grave"). Indeed, as an employee of a Juvenile Detention Center in Essex County, New Jersey writes, "I have personally witnessed the powerful and positive impact that his message, *Akbar Pray Speaks to the Street*, has had on young offenders housed in the center. This taped message was used in workshops among gang members at the detention center and became one of the most effective mentoring tools ever utilized." ECF No. 10-7 at 5–6. Moreover, Mr. Pray has supplemented his writings with the design and implementation of educational programs for inmates intended to help attendees learn "how to change their attitude and thus change their lives." Def. Br. at 13.

  Mr. Pray's efforts have been acknowledged by a litany of current and former government officials. For example, U.S. Circuit Judge Joseph A. Greenaway, Jr. (ret.), then a U.S. District Court Judge and formerly an Assistant United States Attorney involved in Mr. Pray's prosecution, observed Mr. Pray's "Young Men Inc." program at FCI Otisville. *See* ECF No. 21-1. Judge Greenaway, without the awareness of Mr. Pray's connection to the program, commended the "unique initiative," the "success" of which he believed "should be shared with other institutions." *Id.* Former New Jersey Congressman Donald M. Payne, Jr., a Newark, New Jersey native, has also highlighted Mr. Pray's "extraordinary accomplishments, evidencing his hard work and goodwill throughout the decades" and characterized Mr. Pray as a "poster child for release" under the 2023 U.S.S.G. amendments. ECF No. 21-4. Kenneth Gibson, Mayor of Newark, New Jersey

at the time of Mr. Pray's conduct on which he was convicted, notes that in the early 2000s, he "learned of Mr. Pray's involvement as a positive influence in academic and educational circles." ECF No. 10-7 at 1.  Mayor Gibson adds that he "learned that Mr. Pray had been taking an active role in trying to deter many of the young inner city kids who were on a path that would certainly lead them to where he was."  *Id.*  Letters from various academic and non-profit professionals in the local community echo similar sentiments, speaking about Mr. Pray's positive impact through his work while incarcerated.  *See* ECF Nos. 10-7 at 2–3, 7, 9–10.

      Moreover, Mr. Pray's exemplary behavior during his extended term of incarceration, as identified by various prison officials, further reflects rehabilitation.  Indeed, this is corroborated by an affidavit submitted by Jack Donson, Executive Director of the Federal Prison Education and Reform Alliance and a former long-time BOP Correctional Treatment Specialist who was responsible for "counseling, security classification, inmate discipline, program placement/evaluation and re-entry of inmates with sentences imposed in federal district courts and the D.C. Superior Court." ECF No. 21-3 at 1–2.  Mr. Donson reports that, based on his review of Mr. Pray's BOP file, "Mr. Pray has had exemplary conduct" and "has incurred only four minor incident reports during the entire period of incarceration, the most recent occurring over twenty-four years ago" and none of which involved assault, fighting, or weapons. *Id.* at 3.  Mr. Donson further highlights several commendations issued by prison personnel, including a letter from the Warden of FCI Otisville, Mr. Pray's former institution, acknowledging Mr. Pray's "significant contributions to programs and operations at the facility" and his initiative to "reach out to other inmates to encourage program participation, commitment to education and re-entry and assistance in decreasing the overall number of incidents across the institution." *Id.*; *see also* ECF No. 10-6 at 5 (letter of commendation from FCI Otisville Warden); ECF No. 10-6 at 3–4 (letter in support

from former BOP official stationed at FCI Otisville). Additionally, Mr. Pray's unit manager "remarked about his reputation to quell tense situations between inmate gangs and be a positive influence on the younger inmates" and "commended him for seeking out a staff sponsor to develop a group entitled Putting It All Together (PIAT) which included modules such as mentoring, public speaking and resume writing." ECF No. 21-3 at 3. Mr. Donson notes that, based on his extensive BOP experience, "Wardens rarely make such recommendations in writing and it is clear that BOP staff support his efforts towards rehabilitation as well as contributions he has made to the agency itself." *Id.* at 4.

Although the Court acknowledges that rehabilitation on its own cannot serve as a basis for reduction in sentence, when coupled with the additional considerations outlined above, including Mr. Pray's age, duration of incarceration, and health, Mr. Pray's exemplary rehabilitation efforts persuade the Court that he satisfies the U.S.S.G.'s requisite "extraordinary and compelling reasons" criteria.

### 3. 18 U.S.C. § 3553(a) Factors

Next, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) "'to the extent they are applicable'" to determine whether a sentence reduction is appropriate. *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). These factors include:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed—
>
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> **(B)** to afford adequate deterrence to criminal conduct;
>>
>> **(C)** to protect the public from further crimes of the defendant; and

> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). Notably, as an initial matter, the Government does not entirely oppose Mr. Pray's contentions that these factors counsel in favor of a reduction in sentence. *See* Gov't Br. at 17 ("Some of these factors likely favor granting Pray some sort of reduction in sentence."). In any event, the Court will consider the factors in turn below.

As to the nature and characteristics of the offense, the Court will not diminish the seriousness of the crimes of which Mr. Pray was convicted. It is unquestionable that drugs and drug-related crimes, such as those on which the jury found Mr. Pray guilty, have had, and continue to have, severely detrimental impacts on our communities. And in engaging in such conduct, Mr. Pray, and his organization, disgracefully took advantage of victims' fallibility and addiction in search of wealth and a lavish lifestyle. *See* Gov't Br. at 18. It is notable, however, in considering the nature and circumstances of the offenses, that Mr. Pray was not explicitly convicted on any violent conduct. *See* Def. Br. at 15 n.12; Gov't Br. at 3.[7] Indeed, Judge Claude Coleman (ret.) of the New Jersey Superior Court, a former director of the Newark Police Department who was "instrumental in dismantling Pray's drug operation," described Mr. Pray as a "nonviolent offender" with respect to his "crime syndicate." ECF No. 21-2 at 4–5.

As to the history and characteristics of the defendant, as discussed extensively above, Mr. Pray is of advanced age, has experienced a variety of notable medical conditions, has exhibited laudable behavior during his more-than-three decades of incarceration, and has demonstrated

---

[7] The Government notes that a search of Mr. Pray's residence, shared with a co-conspirator, "turned up three loaded handguns, hollow point bullets and two bullet proof vests." Gov't Br. at 3. Nevertheless, the Government concedes that "none of Pray's counts of conviction expressly involved violence," and adds that Judge Bissell did not need to determine whether a sentencing enhancement based on the firearms was warranted "because it wouldn't affect his election of the sentence." *Id.* Accordingly, the Court will not retroactively consider Mr. Pray to have committed a violent offense for purposes of this Opinion.

16

significant rehabilitation and a desire to help others. Moreover, Mr. Pray comes from a difficult background, having grown up in "a dysfunctional, drug infested environment," in which the selling and usage of narcotics was omnipresent throughout his youth. *See* ECF No. 3 at 3.

The next factor contemplates the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)–(D). Mr. Pray's more-than-thirty-five years of incarceration unequivocally reflects the seriousness of Mr. Pray's convicted offenses and suffices as just punishment. The Government's response on this front is also telling. It notes that while the CCE statute under which Mr. Pray was convicted continues to have a mandatory life sentence penalty, "it is not certain that, under the charging guidance federal prosecutors follow today, he would have been charged with an aggravated CCE offense under 21 U.S.C. § 848(b)" without "compelling proof trying Pray to one or more murders" as has been the case with several more recent CCE prosecutions in this District. Gov't Br. at 18–19.

Moreover, the extremely lengthy term of incarceration serves as a deterrent to Mr. Pray specifically as to his future behavior and, with respect to the broader community, "place[s] potential wrongdoers on notice that they will face significant penalties for similar conduct." *United States v. Sealey*, Crim. No. 17-00347-1, 2021 WL 872769, at *3 (E.D. Pa. Mar. 9, 2021). Critically, this is *not* an instance where an inmate served merely a short or even moderate portion of a lengthy sentence of imprisonment, which might undercut the message to the defendant about his conduct and to the public about similar future conduct. Rather, as the Government aptly puts

17

it, Mr. Pray has "already served the equivalent of at least a 42-year term of imprisonment, applying good time credit . . . . *That is a long sentence, by any measure.*" Gov't Br. at 18 (emphasis added).

Next, as discussed in more detail below, the record reflects that further incarceration is unnecessary to protect the public from additional criminal activity by Mr. Pray as he is considered to present a low potential risk of recidivism. *See infra* Section III.B.4.

Finally, there is no indication in the record that Mr. Pray needs further incarceration for education or treatment purposes. Indeed, by all accounts, he is the one *providing* such services to others. Accordingly, without understating the severity of Mr. Pray's role in a massive drug organization and the detrimental effects that such organizations can have on the lives of those in the community and did have on his victims, the Court finds that the § 3553(a) factors on the whole weigh in favor of Mr. Pray's motion for reduction of his sentence.

4. Danger to the Community

As a final matter, U.S.S.G. § 1B1.13(a)(2) requires the Court to decide whether Mr. Pray constitutes a danger to others or to the community under 18 U.S.C. § 3142(g). Mr. Pray contends that based on his longstanding good behavior, his elder age, his BOP custody classification, and his PATTERN score,[8] he does not constitute a danger to the community should he be released. The Government concedes as much, noting that Mr. Pray "probably can satisfy this requirement" for the same reasons. Gov't Br. at 17; *see id.* ("And given his age and 3½ decades away from Newark, Pray would be hard-pressed to reclaim his former status as a drug-trafficking kingpin, even were he inclined to return to that life.").

---

[8] Implemented by the BOP following the passage of the First Step Act, the Prisoner Assessment Tool Targeting Estimated Risk and Needs (known as "PATTERN") is a recidivism risk assessment tool that categorizes future risk as minimum, low, medium, or high for both general and violent recidivism. ECF No. 21-3 at 3.

Mr. Pray's contention and the Government's concession is corroborated by Mr. Donson's affidavit, which states in relevant part: "It is clear from the government records reviewed that Mr. Pray is . . . not a threat to his community . . . . I concur with the government's recidivism risk assessment tool that he presents a 'minimum' risk for recidivism should the court be inclined to grant release." ECF No. 21-3 at 4; *see also id.* at 3 ("In my professional opinion, his behavioral record is not indicative of dangerousness to the community which is commensurate with the DOJ Pattern recidivism risk assessment tool which projects Mr. Pray to have a minimum risk for recidivism."). Accordingly, in accordance with U.S.S.G. § 1B1.13(a)(2), the Court finds that Mr. Pray "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

### IV.    CONCLUSION

A reduction in a sentence of incarceration under 18 U.S.C. § 3582(c)(1)(A) is "'an exceptional remedy the court does not grant lightly.'" *United States v. Carazolez*, Crim. No. 18-0081, 2020 WL 5406161, at *4 (D.N.J. Sept. 9, 2020) (quoting *United States v. McKinnon*, Crim. No. 03-0251, 2020 WL 4530737, at *4 (M.D. Pa. Aug. 6, 2020)). Nevertheless, under the extraordinary and compelling circumstances presented in this case, and for the reasons stated in great detail in this Opinion above, Defendant's motion for a reduction in sentence is **GRANTED**. An appropriate Order accompanies this Opinion.

**DATED:**   9/30/2024

**CLAIRE C. CECCHI, U.S.D.J.**